# EASTERN BUILDING AND LOAN ASSOCIATION *v.* EBAUGH.

ERROR TO THE SUPREME COURT OF THE STATE OF SOUTH CAROLINA.

No. 177. Argued March 3, 1902.—Decided April 7, 1902.

This case was presented to the court below with the facts found by the
trial court, among which were that under the circumstances it was the
law of New York that the plaintiff in error could not be heard to say
that its promise was *ultra vires;* and it was decided that such findings
of fact were conclusive upon it. This court holds that the law of New
York was a necessary element in the propositions and in it was involved
not only what the statutory law is, but what its application is under the
courts of that State, both of which were facts to be proved, and the find-
ing upon which was binding on this court.

The plaintiff in error is a building and loan association incor-
porated under the laws of the State of New York, and has its
principal place of business in the city of Syracuse in that State.
The defendant in error is a shareholder in said corporation,
and brought this action in the Court of Common Pleas of the
county of Greenville, State of South Carolina, for the par value
of his stock, to wit, the sum of $1000, or, failing in that, for the
sum of $580, the money paid in by him.

By agreement of counsel all issues of law and fact were re-
ferred to a referee. The referee took testimony, and reported

to the court " that the plaintiff is entitled to recover judgment against the defendant for the sum of one thousand dollars, with interest from October 15, 1898, at the rate of seven per cent per annum, and for the costs of this action."

The report of the referee was confirmed, and judgment was entered for the plaintiff (defendant in error) in accordance with the report. The judgment was affirmed by the Supreme Court of the State, and the case was then brought here.

The facts as recited in the opinion of the Court of Common Pleas are as follows (58 S. Carolina, 83):

" The defendant is a corporation organized under the laws of New York, with its principal place of business in the city of Syracuse. In the early part of the year 1892, it began business in the State of South Carolina, and organized in the city of Greenville, a local branch of said association. The plaintiff is a resident of the city of Greenville, in said State. The defendant's agent approached the plaintiff for the purpose of inducing him to become a stockholder in the defendant company. The agent exhibited to the plaintiff a form of the certificate of stock, which contained, among other things, this promise:

" 'Eastern Building and Loan Association of Syracuse, New York, agrees to pay said shareholder, or his heirs, executors, administrators or assigns, the sum of one hundred dollars for each of said shares, at the end of seventy-eight months.'

" At the same time the agent exhibited to him certain printed circulars, or literature, of the defendant company. One of these circulars was entitled ' The definite contract plan.' This circular stated:

" 'Q. What amount is deposited monthly? A. Seventy-five cents per share. . . .

" 'Q. When will the shares reach their par value? A. Shares mature in exactly six and one half years.

" 'How much will a member have to pay in altogether? A. On a basis of ten shares (one thousand dollars maturity value) he will have paid in five hundred and ninety-five dollars ($595) and receives one thousand dollars. . . .'

" 'All shares on which payments are made are regularly ma-

tured at the expiration of seventy-eight months (six and one-half years) from date of certificate. . . .

"'*Illustration.*

"' Showing cost and profits to the investor of ten shares of $1000 six and a half years, at time of maturity.

He pays a membership fee of $1.00 per share... $ 10 00
He pays monthly instalments of $7.50 per month
　for 78 months, $7.50 × 78................ 585 00
　　Total amount invested.................. $ 595 00
He receives in cash at maturity.............. 1000 00'

". . . 'The only association making a contract definite in every particular. . . . Stock matures in seventy-eight months.'

" On reading the circulars and after listening to the persuasive talk of the agent, the plaintiff was induced to become a subscriber for ten shares of stock. Thereupon the certificate sued upon was issued to him. This certificate is dated on April 1, 1892. It certifies that ' D. W. Ebaugh, of Greenville, county of Greenville, and State of South Carolina, is hereby constituted a shareholder of the Eastern Building and Loan Association of Syracuse, New York, incorporated under the laws of New York, and holds ten shares therein of one hundred dollars each, and in consideration of the membership fee, together with agreements and statements contained in the application for membership in the association, and full compliance with the terms, conditions and by-laws printed on the front and back of this certificate, which are hereby referred to and made a part of this contract; and the said Eastern Building and Loan Association of Syracuse, New York, agree to pay to said shareholder, or his heirs, executors, administrators or assigns, the sum of one hundred dollars for each of said shares at the end of seventy-eight months from the date hereof.

" Ebaugh paid the entrance fees, and continued to pay the monthly instalments until seventy-eight months had elapsed. The last payment was made on October 1, 1898. In subscribing to this stock and in making these payments, Ebaugh trusted to

the statements contained in the circular and to the promise made in the certificate.   About one month before the last payment was made, the association wrote to Ebaugh stating that they could not carry out the contract, and stating that they could not pay him one hundred dollars upon the end of seventy-eight months, but that he would have to continue making payments.   In reply to this, Ebaugh wrote that he had made a definite contract with the association, and expected them to comply with its terms.   A short time after making the last re-. mittance he signed a blank receipt upon the back of the certificate, and sent the same to the association, with the request that they forward him a check for the money due him.   The association refused to make payment, and on January 17, 1899, this action was commenced to recover from the association the sum of one thousand dollars, with interest thereon from October 1, 1898.   Certain property of the defendant company in this State was attached in said action.

"The defendant made answer, alleging that there was no contract to mature the stock at a definite period, but that it was only estimated that the stock would be matured in seventy-eight months.   It also claims that any promise to mature the stock within a definite time would be contrary to their by-laws and charter, and contrary to the laws of New York.

"By agreement of counsel, all issues of law and fact were referred to Oscar Hodges, a member of the bar at Greenville, as special referee.   Mr. Hodges took testimony, and heard argument, and filed his report, wherein he concludes 'that the plaintiff is entitled to recover judgment against the defendant for the sum of one thousand dollars, with interest from October 15, 1898, at the rate of seven per cent per annum, and for the costs of this action.'

"To this report the defendant filed certain exceptions.   After hearing argument, I am satisfied that the report of the referee is correct in every particular, and the exceptions are hereby overruled.   The defendant certainly made definite assurances in those circulars, and a definite promise as to the maturity of stock; that if the plaintiff would pay the entrance fees, and his monthly dues for seventy-eight months, that at the end of that

time it would pay to him one hundred dollars for each share of stock taken by him. These assurances and this promise were made for the purpose of procuring the plaintiff as a stockholder. This promise was definite. The plaintiff relied upon it, and made the payment of his entrance fees, and his monthly dues. The association knew that the plaintiff was relying upon its promise, and allowed him to make all these payments and to incur the liability of a stockholder. It received the full benefit of this transaction, and it cannot now be heard to say that the contract was contrary to its by-laws, or its charter. Even if this contract were in excess of its charter powers, the association would, nevertheless, be bound by it, inasmuch as it received the full benefit thereof."

*Mr. William Hepburn Russell* for plaintiff in error. *Mr. William Beverly Winslow* was on his brief.

*Mr. H. J. Haynsworth* for defendant in error. *Mr. W. H. Lyles*, *Mr. L. W. Parker* and *Mr. L. O. Patterson* were on his brief.

MR. JUSTICE MCKENNA delivered the opinion of the court.

Plaintiff in error invokes against the judgment, to quote from the brief of counsel, "those provisions of the Constitution of the United States which declare that 'full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State;' that no State shall 'pass . . . any law impairing the obligation of contracts,' and that 'no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.'"

The protection of those constitutional provisions is claimed because it is asserted the courts of South Carolina disregarded the law of New York as expounded by the courts of that State.

Certain decisions of New York were introduced in evidence

by plaintiff in error, and from them it is deduced that the law of the State was and is that the contract between the association and its stockholders is constituted not only of the certificate of stock and its indorsement, but as well of the articles of association and by-laws of the corporation, and therefore the period of maturity was an estimate, not an assurance. And further, that it was established as the law of New York, in *O'Malley* v. *Loan & Savings Association*, 92 Hun, 572, p. 577, " that the authority to issue a certificate with a fixed period of maturity is not expressly given either by the statute or by articles of association or by-laws of the association." And that the association " did not possess the power or authority to issue a certificate specifying a fixed maturity period, and that the clause in the certificate should be construed as an estimated period of maturity."

To the first proposition the courts of South Carolina answer with a finding of fact that the plaintiff in error had given the defendant in error a definite promise that his stock would mature in seventy-eight months—not a promise only by the certificate, but assurances in circulars and positive representations by an agent.

The Supreme Court of South Carolina did not find it necessary to concur with or dissent from the second proposition advanced by plaintiff in error. The court said (58 South Carolina, 83, p. 87):

" The appellant contends that the contract must be construed with reference to the laws of New York, and attempts to differentiate this case from those just mentioned (prior cases were cited) on the ground that the answer alleges, and the testimony establishes, the fact, that under the laws of the State, the by-laws of the association and not its express agreement, must prevail in the interpretation of the contract between the parties.

" Both the master and Circuit Judge found as a matter of fact that the laws of New York did not forbid the defendant from entering into an agreement by which the shares of stock would mature in a definite time.

" In his report the master says:

" ' The question as to whether this promise was in excess of the charter powers, was not expressly decided by the Supreme Court, but that court did decide that even though it were in excess of its charter powers (in the language of *B. B. R. R. Co.* v. *McDonald,* 60 Am. St. Rep. 172): " The general rule is that where a private corporation has entered into a contract, not immoral in itself, and not forbidden by any statute, and it has been in good faith performed by the other party, the corporation will not be heard on a plea of *ultra vires.*"

" ' This proposition is fully sustained by the decisions of New York.. The plaintiff introduced in evidence the following deci- sions of that court: *Whitney Arms Co.* v. *Barlow,* 63 N. Y. 62; *De Grand* v. *American Linen Thread Co.,* 21 N. Y. 124; *Diamond Match Co.* v. *Roeber,* 106 N. Y. 473.

" ' This constituted the only evidence before me as to what was the law of New York touching this point. I find as a matter of fact that the law of New York is that where a cor- poration enters into a contract, that is in excess of its charter powers or is unauthorized by law, it will nevertheless be bound to perform its agreement as contained in the contract, if it suf- fers the other party to perform his agreement and receives the benefits and retains them.

"'This being the law of New York, it is conclusive of the case at issue.'

" "The report of the master was confirmed in all respects by the Circuit Judge.

" As this is an action at law, the foregoing findings of fact are not subject to review but are conclusive on this court.

" As the laws of New York are not in conflict with the con- struction which this court has placed upon contracts similar to that upon which the action herein is founded, we fail to discover any facts causing us to differentiate this case from those here- inbefore mentioned."

It will be observed, therefore, that the case was presented to the Supreme Court of South Carolina with the facts found by the trial court as follows: (1) that the plaintiff in error had made a positive promise that the stock of defendant in error would mature in seventy-eight months; (2) under the assurance

of that promise the defendant had subscribed for the stock and had performed in good faith all obligations on his part; (3) under such circumstances it was the law of New York that plaintiff in error could not be heard to say that its promise was *ultra vires.* And the court decided that such findings of fact were conclusive upon it.

The case is presented here under like conditions. This is a writ of error to the state court, and whatever was a question of fact there is a question of fact here. This court said, speaking by Chief Justice Waite, in *Chicago & Alton Railroad Co.* v. *Wiggins Ferry Co.,* 119 U. S. 615, where, as in the case at bar, was invoked that provision of the Constitution of the United States which requires the courts of one State to give full faith and credit to the public acts of another :

" Whenever it becomes necessary under this requirement of the Constitution for a court of one State, in order to give faith and credit to a public act of another State, to ascertain what effect it has in that State, the law of that State must be proved as a fact. No court of a State is charged with knowledge of the laws of another State ; but such laws are in that court matters of fact, which, like other facts, must be proved before they can be acted upon. This court, and the other courts of the United States, when exercising their original jurisdiction, take notice, without proof, of the laws of the several States of the United States; but in this court, when acting under its appellate jurisdiction, whatever was matter of fact in the court whose judgment or decree is under review, is matter of fact here. This was expressly decided in *Hanley* v. *Donoghue,* 116 U. S. 1, in respect to the faith and credit to be given by the courts of one State to the judgments of the courts of another State, and it is equally applicable to the faith and credit due in one State to the public acts of another."

We are not called upon, therefore, to review or reply to the very able argument of counsel for plaintiff in error, advanced to show that the situs of the contract between the parties was New York, and that the words " public acts," in article IV, sec. 1, of the Constitution of the United States, mean the public statutes of the State.

A necessary element in both propositions (if they may be regarded as independent) is the law of New York; and in the latter is involved not only what the statutory law is, but what its application is under the decisions of the courts of that State. Both, as we have seen, were facts to be proved, and the finding upon which is binding upon us.

*Judgment affirmed.*

MR. JUSTICE GRAY did not hear the argument and took no part in the decision.