GUSTAVE M. MILLER and JOHN E. MILLER, Respondents, *v.* EAGLE SAVINGS AND LOAN COMPANY, Appellant.

Second Department, October 20, 1916.

Savings and loan companies — suit by member to reform mortgage — limitation placed upon powers of such companies by chapter 704, Laws of 1899 — equity — decree compelling company to violate statutory restrictions — form of relief where mortgage induced by fraud.

As chapter 704 of the Laws of 1899, amending the former statutes relating to savings and loan companies, expressly prohibits the declaring of dividends except from profits earned, and limits dividends to six per cent and places other limitations upon such companies, it is error for the court to reform an agreement entered into by such company after the passage of the act so as to make a mortgage given by a member mature after 144 payments, if, in order to bring about that result, the company would have to pay dividends equal to fifteen per cent and that irrespective of profits earned, for the result of such reformation will require the company to do what is expressly prohibited by statute.

Moreover, *it seems*, that a member would not be entitled to have the mortgage reformed when, as a matter of fact, he is in default in payments due thereon.

The relief, if any, to which the plaintiff is entitled if he was led to the execution of such mortgage by misrepresentation, is a rescission thereof and an accounting, in which he shall be charged with all payments by the company and be credited with all payments made by him, with interest, the mortgage to be held valid for any balance found to be owing to the company.

Moreover, the plaintiff is not entitled to the equitable relief prayed for when the result thereof will be to make a loss in dividends fall upon that

class of members who have not borrowed money of the company and inequitably give to borrowing members a much larger percentage of dividend than the other class.

REARGUMENT of an appeal by defendant, Eagle Savings and Loan Company, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Kings on the 1st day of July, 1915, upon the decision of the court after a trial at the Kings County Special Term.

*Almet Reed Latson* [*James Crooke McLeer* with him on the brief], for the appellant.

*Joseph R. Clevenger,* for the respondents.

MILLS, J.:

The action was brought in equity to have a bond and mortgage, given by the plaintiffs to the defendant, reformed so as to make the principal thereof $2,850, instead of $3,420, and to make the monthly payments therein provided to be made by plaintiffs cease 144 months from the date of the instrument. The ground for reform alleged in the complaint is that the plaintiffs were induced to sign the bond and mortgage by false representations made by defendant that they were to the above stated effects.

The defendant is one of the old associations of the general character indicated by its title, having been organized under the first act for such, namely, chapter 122 of the Laws of 1851. Its general scheme or system of business is to issue to those who join it stock of a certain par value, and to have that stock paid for after its issuance by small monthly payments and dividends to be apportioned *pro rata* from the earnings annually. Members who choose may borrow in advance upon such shares, to the par value thereof, giving as collateral security a bond and mortgage upon real estate. When the credits to a member upon his stock, from dues and such dividends, equal the par value of the stock, the same is regarded as matured and he is paid thereon its face value, if he has not borrowed upon it, and, if he has borrowed upon it, then his bond and mortgage are canceled with the stock. According to

defendant's system, each applicant for such a loan or advance signs an application, wherein he agrees to pay a certain premium by having it included as a part of the loan, and a certain sum monthly as dues, and another sum monthly as interest, until the maturity of the shares. It appears that the defendant had, for several years prior to the transaction in suit, declared dividends at the rate of fifteen per cent annually, so that, upon that basis, the stock would mature at a certain number of years, varying with the different classes thereof according to the rate of dues paid. The plaintiffs in this case signed such an application April 7, 1905, which provided for a loan of $3,420, of which $570 was premium, and in which application they agreed to pay, in dues and interest, $25.65 a month "for not exceeding 144 months," and in which they also agreed to abide by defendant's articles of association and applied for thirty-four and two-tenths shares in Class "A" 12 of defendant's stock, the par value of which would equal the loan. Such application was the same day approved by defendant's executive committee, and on April 28, 1905, the transaction was closed, the plaintiffs giving to the defendant a bond and mortgage for said principal sum, which, instead of providing that plaintiffs' payments should not exceed 144 months, declared that they should continue until the maturity of the aforesaid thirty-four and two-tenths Class "A" shares. The plaintiffs continued their such monthly payments until November, 1914, when they brought this action.

The decision finds as facts: (a) That April 7, 1905, the plaintiffs made a written application to the defendant for thirty-four and two-tenths shares in Class "A" 12 stock, and for a loan or advance thereon of $3,420, made up of three items, viz., $2,000 to constitute a first mortgage, $850 in cash and $570 as premium, and therein agreed to pay to the defendant each month $25.65 for dues and the interest upon such advance "for not exceeding 144 months," and that such application was approved by defendant's executive committee the same day, and that plaintiffs were induced to make such application by defendant's written (viz., letter and prospectus) and oral positive representations that the bond and mortgage to be given by them would be, at the end of such payments for

not exceeding 144 months, fully paid and discharged; (b) that the said application contained words to the effect that the plaintiffs agreed to abide by defendant's articles of association and regulations, but that said words were meaningless; (c) that the plaintiffs, on April 28, 1905, executed to the defendant a bond and mortgage for the said loan and advance, which, instead of providing that the said monthly payments of $25.65 each month should not extend beyond 144 months, as stated in said application, did provide that they should continue until the maturity of said shares; (d) that the plaintiffs did not read or have read to them said bond and mortgage, but were told by the defendant or its representatives that they conformed to the said application, and that, in full reliance upon the truth of such statement, plaintiffs executed the bond and mortgage and did not discover their falsity, that is, that they did not contain said limitation of 144 months, until the fall of 1914; and (e) that the said representations were false and were made by defendant with the intent thereby to deceive and defraud the plaintiffs.

Upon those facts so found, the decision concludes, as matter of law, that the plaintiffs are entitled to have the bond and mortgage reformed so as to provide that the said payments should not be made or continued beyond 144 months and directs judgment accordingly, with costs. The decision contains no finding that the plaintiffs made such monthly payments up to any period, but it was proven that they made them up to November 1914, but had defaulted upon those subsequently accruing. This action was commenced in November, 1914.

I think that the decision is incorrect both in fact and in law; in fact, in that the finding to the effect that the plaintiffs executed the bond and mortgage in the belief that they absolutely limited their payments so as not to exceed 144 months is against the greater weight of the evidence, and, in law, in that the reformation decreed compels the defendant to make a contract which it was incompetent to make when the bond and mortgage were given, as the defendant was then in effect by statute prohibited from making such a contract.

As the other sitting members of this court do not agree with

me in my such view as to the facts I do not attempt herein to further state such view or to set forth my reasons for it.

As to the law ground or point above stated I am, after a careful review of the statutes and decisions, convinced that the contract of the bond and mortgage, as reformed by the decision and judgment herein, is one which defendant was not at that time authorized to make. The gist of the contract, as so reformed, is that defendant agreed to credit to plaintiffs' shares during the 144 months dividends equivalent to about fifteen per cent a year. According to its system the dividends were derived from premiums which, prior to chapter 126 of the Laws of 1910 (amdg. Banking Law [Consol. Laws, chap. 2; Laws of 1909, chap. 10], art. 6), had run as high as twenty-six and two-thirds per cent, and rents, but principally from the premiums. Defendant's profits were distributed as dividends to the stock *pro rata* according to the amounts then already paid upon and credited to the stock. For several years before this transaction defendant had declared and credited dividends from fourteen to sixteen per cent a year. In 1910 (Chap. 126) the Legislature passed an act to take effect January 1, 1911, which limited the amount of the premiums, and the effect of that act was to very much reduce defendant's premiums, and, consequently, its earnings, so that it has of late declared dividends only at the rate of five per cent. It is quite evident that if the decision of the trial court in this case shall stand and become a precedent the defendant will be unable to declare any future dividends, even if it shall continue solvent. Defendant sought to prove the exact situation in that respect, but the learned trial court excluded the evidence, but such situation is manifest. Chapter 704 of the Laws of 1899, which was in force when the bond and mortgage herein were given, defined exactly what sort of "Limited Payment Plan" such an association as the defendant could run or advance upon. Prior to that time the statute under which defendant was organized, namely, chapter 122 of the Laws of 1851, and the amendments thereto, for which see Birdseye's Revised Statutes (Vol. 1 [1st ed.], p. 342 *et seq.*), contained no express provision upon that subject. It did in section 7 (as amd. by Laws of 1875, chap. 564, § 1) provide that "no dividend shall be declared, except from the earnings of the asso-

ciation;" and this court, by Mr. Justice BARTLETT writing, in *Watson* v. *Columbia Mutual B. & L. Assn.* (71 App. Div. 498, 499), in April, 1902, held, in effect, that that provision did prohibit such an association from making a contract to pay a fixed dividend in the future. The Court of Appeals, however, in December, 1902, in *Vought* v. *E. B. & L. Assn.* (172 N. Y. 508, 517) declined to decide that question of power, and held that where such an association had made a definite contract, namely, that the shares should mature at a certain date, which required the declaration of large future dividends, and the stockholder had gone on and completed his part of the contract by making all of his stipulated payments, the association was obliged to perform its part, and could not defend upon the ground of *ultra vires*. In stating the rule the opinion makes the *caveat* that the contract "did not offend any express statute" (p. 517). The shares involved in that action were issued in December, 1891, when there was no express statute defining what limited payment contract such an association might make. The contract upheld or at least enforced in that case was in effect an engagement that dividends to at least a certain amount should be paid in the future, as the payments to be made by the stockholder, with interest thereon, would not, in the stated time, amount to the par of the stock. That was one hundred dollars a share, and, according to the contract, seventy-five cents were to be paid upon each share each month for seventy-eight months, or fifty-eight dollars and fifty cents in the aggregate, and the interest thereon for one-half the time, or thirty-nine months, would be eleven dollars and forty cents, which, added to the fifty-eight dollars and fifty cents, makes only sixty-nine dollars and ninety cents as the credit to that stock without any dividends. I cannot for my part see why that contract was not in effect prohibited by the above cited provision of the statute that dividends should be paid only from the earnings, at least to the extent that such contract might call for dividends more than the earnings in the future. That provision of the statute was not considered in that opinion.

In the cases of *Eastern B. & L. Assn.* v. *Ebaugh* (185 U. S. 114) and *Eastern B. & L. Assn.* v. *Williamson* (189 id. 122), cited by the learned counsel for the respondent, the United

States Supreme Court held merely that the finding of the South Carolina courts, that the law of New York was that such a contract was enforcible against such an association, was a finding of fact conclusive upon the United States court. In the latter case, however, the opinion approves the reasoning upon this point of the Court of Appeals in the *Vought* case, but in both of those cases the stock was issued prior to the act of 1899.

In the case of *Tautphoeus* v. *H. & S. B. & S. Association* (185 N. Y. 308), also cited by said counsel, the stock was issued before the act of 1899. In that case the Court of Appeals enforced defendant's guaranty that the stock should be payable any time after seventy-two months; but in that case the stock had been issued upon payment of its full face (104 App. Div. 452), and it bore only lawful interest, so that there was in the case no question of future dividends or the power to contract exactly as to them.

In *People* v. *N. Y. N. B. & L. Association* (95 App. Div. 244) this court held, by Mr. Justice HOOKER writing, that a guaranty that the stock should be paid in seven years was enforcible, and that it was no defense to the association to show that it had failed to earn money enough to pay the necessary dividends. The opinion cited the *Vought Case* (*supra*) as having held broadly that doctrine (p. 249), while, as I have already indicated, the opinion in that case did not hold such a contract valid, but merely held it enforcible when the member had in good faith fully performed his part and the contract was not forbidden by express statute. In that case, also, the stock was issued before the act of 1899. It is to be noted that the said chapter 126 of the Laws of 1910, at the end of section 230 of the Banking Law, as amended by said act, provided that " No shareholder shall claim to be exempt from making the payment of dues, interest, premium, and fines provided in the by-laws, upon the ground that by reason of losses or otherwise the required payments have continued longer than was originally anticipated," and the effect of that provision does not seem to have been considered in any reported case.

There are some Appellate Division decisions rendered prior to the decision of the Court of Appeals in the *Vought Case* (*supra*),

which hold variously upon the question of the enforcibility of such a contract. Thus, *Neuman* v. *N. Y. M. S. Assn.* (17 App. Div. [4th Dept.] 72) held that where the member had been induced to take stock by a false representation that the association had earned certain dividends in the past, he could rescind; but the court clearly made the distinction that the representation was not as to future earnings, but as to past.

*O'Malley* v. *People's Bldg. Assn.* (92 Hun [5th Dept.], 572) held expressly that such an association had no power to make such a fixed maturity contract; but *People's Building, L. & S. Assn.* v. *Platz* (59 App. Div. [3d Dept.] 275) held to the contrary.

In *House* v. *Eastern B. & L. Assn.* (52 App. Div. 163) the Appellate Division of the Fourth Department, adopting the opinion of HISCOCK, J., at Special Term, held that it was unlawful for such an association to make such a contract.

In *Garvey* v. *N. Y. B. L. B. Co.* (57 App. Div. 193) this court, by the present presiding justice writing, held that such a bond and mortgage could not be reformed so as to make it an ordinary straight one, but the question of such power was not in that case considered.

Those somewhat variant decisions of the Appellate Divisions were doubtless the ones referred to by the opinion of the Court of Appeals in the *Vought Case* (*supra*, 518). In view of those decisions it is not entirely clear what the law of the State is upon this point. This much is plain, I think, namely, that, aside from the act of 1899, where such a definite contract, made before that act, has been in good faith fully executed by the member and the association has received the benefit of his such performance, it cannot repudiate the contract and escape liability upon the ground of want of statutory power upon its part to enter into it. That much was decided by the *Vought Case* (*supra*) with the exception that the making of such contract was not expressly forbidden by the statute. It seems to me that under and by said act of 1899 the making of the contract, as reformed by the decision herein, was expressly forbidden. Such contract was made in 1905, at least five years after that act went into effect. That statute (Laws of 1899, chap. 704, amdg. former Banking Law [Gen. Laws,

chap. 37; Laws of 1892, chap. 689], § 178, as amd. by Laws of 1894, chap. 705) defined precisely the limited payment contract which such an association might make. That definition contains the following limitations, neither of which appear in or is consistent at all with such reformed contract, namely:

(a) Under that plan the premium bid must be in the form of a rate of interest to be paid upon the loan, whereas by the application the premium here bid was in the form of twenty-five cents per share for sixty-six and two-thirds months.

(b) Under that provision the definite rate of dividend fixed in the contract, to be credited from the profits, can be so credited only if the earnings "are sufficient for that purpose." The application here contains no such fixed rate and no such limitation.

(c) By such provision the rate of such dividend to be credited can in no case exceed the interest premium bid, and in no case can exceed six per cent, while neither such limitation is contained in the application, and the latter limitation, viz., not to exceed six per cent, is utterly inconsistent with the result of full payment in 144 months, which would require dividends equal to about fifteen per cent for each of the twelve years.

This is a very vital distinction. The sufficiency referred to in the statute, viz., "If its earnings are sufficient for that purpose," must refer at least to all the shares of the same class and not merely to the shares of the member making the particular contract. This limitation necessarily prevents the association from making an agreement for an absolutely definite date of maturity.

(d) According to that provision the payments on the stock must be such that with the dividends from the profits, exclusive of the expense fund, etc., such payments will, at the end of the maximum period, equal the matured value of the stock; while evidently, under the construction given to the application by the decision herein, such a result would be impossible.

(e) By that provision of the statute the borrowing member must waive "his right to full participation in the profits of such association." By the application here and the reformed contract the plaintiffs made no such waiver. Indeed, they remained entitled to full participation in such profits, and

the stipulation was merely that they should make their monthly payments "for not exceeding 144 months."

Hence, within that limit of time, the plaintiffs by that contract are entitled to fully participate in such profits, even if the result be that their shares mature in less than the 144 months. It is, therefore, manifest, I think, that the application, as construed by the decision, and the contract as reformed thereby, were prohibited by that statute, viz., chapter 704 of the Laws of 1899. Therefore, as I conclude, the decision was erroneous as matter of law in reforming the contract so as to compel the defendant to make a contract which it was by statute expressly prohibited from making, which appears to have been the legal situation after the act of 1899, whatever may have been the case prior thereto. The contracts considered in all the cases above reviewed were made before that act.

Moreover, as to any contract made before that act, there appears to be no decision reforming the contract made by the bond and mortgage, so as to put into it an absolute limit of time for the payments. Even were the action here one to enforce the contract, like that considered in the *Vought Case (supra)*, it could not be maintained upon this record, which wants both the allegation and the finding that plaintiffs have fully performed the contract, which they allege, *i. e.*, that they have made all or even any of the stipulated payments. The proof shows merely that they made those payments up to November, 1914, when this action was commenced, and that they have defaulted all payments since that month. Upon their theory of the case they are bound to continue those payments until April, 1917.

If, upon the facts found in the decision, the plaintiffs are entitled to any relief, I think that relief must be a rescission of the contract made by the bond and mortgage and an accounting between the parties in which plaintiffs shall be charged with all payments made by defendant to or for their benefit and be credited with all payments made by them to the defendant, with interest upon each set of payments, and the bond and mortgage held valid for any balance so found due the defendant from the plaintiffs. Such calculation would be approximately as follows:

| | | |
|---|---|---|
| Amount paid by defendant....................... | $2,850 | 00 |
| Interest thereon from the date of the bond and mortgage, April 28, 1905, to the date of the decision, July 1, 1915................. ................. | 1,739 | 92 |
| Total.................................... | $4,589 | 92 |
| Amount paid by plaintiffs as per pass book....... | $2,925 | 24 |
| Interest thereon for one-half of said period....... | 892 | 93 |
| Total.................................... | $3,818 | 17 |

This would show a balance of money had and received due from plaintiffs to defendant, of $771.75, for which the bond and mortgage would stand as security.

Moreover, it seems to me that the plaintiffs' case presents no substantial equity, at least not for a reformation. Defendant's members are divided into two main classes, viz., the borrowing and the non-borrowing, both of whom share in the dividends and have or expect to have their obligations to the defendant paid largely by the dividends, and when such obligations are so fully paid, the borrowing member has his bond and mortgage canceled, and the non-borrowing is paid upon his stock the full par thereof. It appears that the defendant issued also what were called saving shares to depositors, upon which a small interest was paid, and that the plaintiffs before this transaction were of that class. There can be no doubt that the non-borrowing members of the same period took stock upon the same prospectus of anticipated earnings and maturity as did the plaintiffs and other borrowing members. The Legislature has since stepped in, and by making stringent limitations upon the power of such associations, reduced by fully one-half, and practically even more, their earning capacity, so that the dividends of the defendant have been reduced approximately from fifteen to five per cent a year. The effect of the decision herein made by the Special Term, if it become a precedent, will be that the loss, or rather the grievous disappointment from the non-fulfillment of the anticipations of the period when the plaintiffs became members that the dividends would continue

at approximately fifteen per cent, will fall wholly or largely upon the non-borrowing members, and the borrowing members of plaintiffs' class and situation, which must be a large one, will entirely escape therefrom. It seems to me manifest that the equity of the non-borrowing members is as great as that of the borrowing, and that it would be most inequitable to impose upon either class substantially all of that loss or disappointment. It ought in common justice in some way to be apportioned *pro rata* among all the members of all classes except the mere depositors.

I recommend, · therefore, that the decision be modified as follows, namely:

(a) By making and adding thereto the following finding of fact, viz.:

### XVII.

That the defendant, on or about April 28, 1905, in the said transaction paid out to or for the benefit of the plaintiffs the sum of.................... $2,850 00

and that the interest thereon from that date to the date of this decision, July 1, 1915, is the sum of.    1,739 92

making a total of.............................. $4,589 92

and that the payments actually made by plaintiffs to the defendant in the said transaction aggregate the sum of................................    2,925 24

and that the interest upon such payments to the date of this decision amounts to the sum of......    892 93

making a total of.............................. $3,818 17

which is $771.75 less than the said total of defendant's said payments and interest.

(b) By changing the conclusion of law therein designated as " I," by omitting therefrom all after line 7 thereof, and in place of such omission inserting the words " hereby adjudged and decreed to be valid and effective for the principal sum of $771. 75, with interest thereon from July 1, 1915. And it is further ordered, adjudged and decreed that the said bond and mortgage are valid obligations of the said plaintiffs to the defend-

ant for the said principal sum and interest, and enforcible as such."

I further recommend that the judgment appealed from be modified so as to conform to the said decision as so changed, and as so modified affirmed, without costs.

THOMAS and STAPLETON, JJ., concurred; RICH and PUTNAM, JJ., concurred in result.

Judgment modified on reargument in accordance with opinion by MILLS, J., and as so modified affirmed, without costs. Order to be settled on notice before Mr. Justice MILLS.