AGNES C. WALLIS, Appellant, *v.* EAGLE SAVINGS AND LOAN
COMPANY, Respondent.

Second Department, December 29, 1917.

**Banks — savings and loan company — right of member who has
paid full par value for shares to repayment of principal on
maturity — articles of association construed — distinction between
rights of different classes of members — priority.**

Where the plaintiff, a member of a savings and loan company, paid full
par value for her shares instead of paying by installments as was the
case with another class of members, and under the articles of association
and the terms of the script she was not entitled to share in the profits
of the company but only to receive six per cent interest on her shares
for a specified period, after which she was entitled to repayment of the
principal, while the other members, paying in installments, were entitled
to share in the profits of the company, a clause in the articles of the com-
pany limiting the withdrawal of funds by members to " one-half of the
monthly dues received in any one month," is not applicable to the shares
of said member at maturity, and at that time the principal became
payable. The limitation upon withdrawals applies to the other class
of members who pay in installments and share in the profits. Hence,
such member at the maturity of her shares is entitled to the repayment
of the full par value.

As the plaintiff's certificates expressly stated that they were " issued by
authority of and subject to the provisions of the Articles of Association
of the Corporation and the regulations adopted thereunder," they were,
by their very terms, subject to the provisions of the articles in force at
the time of the plaintiff's subscription.

An amendment to the articles of association, made subsequent to the
plaintiff's purchase of shares, which made the provisions as to the manner
of paying withdrawals apply to payments after maturity as well as to
those before maturity, and the statute which authorized such amendment
to the articles, do not affect the plaintiff's right to payment in full on
the maturity of her shares where both the amendment and the statute
upon which it was based expressly provided that contracts made prior
to a certain date, which was subsequent to the plaintiff's purchase of
shares, should not be affected by the amendment.

The plaintiff, having paid for her shares in full, and being entitled to
receive interest only, is equitably entitled to priority in the repayment
of the principal on the maturity of her shares as against the other class
of members who paid for their shares in installments and shares in the
profits of the company.

Where the facts at trial are undisputed, the Appellate Division may give
relief and not reverse and order a new trial.

APPEAL by the plaintiff, Agnes C. Wallis, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Kings on the 11th day of April, 1917, dismissing the complaint upon the merits upon the decision of the court after a trial before the court, a jury having been waived.

*Francis Stockton McDivitt* [*George J. S. Dowling* with him on the brief], for the appellant.

*Almet Reed Latson*, for the respondent.

MILLS, J.:

This is another of the numerous actions against the Eagle Savings and Loan Company which have come before us upon various appeals during the past three years. It is, however, different from any of the others in that the shares involved are of the paid up class C, while in *Miller* v. *Eagle Savings & Loan Co.* (174 App. Div. 581) and other previous cases those involved were of other classes, or all, as I recall it, of class A. The main difference between the two classes is that in class C the member at his subscription pays at once to the company the full principal of $100 upon each share and is entitled to receive income out of the profits of the company only as interest, not exceeding the lawful rate of six per cent, and in the end, that is, after the specified period (in this case twelve years), repayment of his principal, whereas in class A the member pays in the principal in installments in the way of dues and by having his share of the profits, unlimited save by the earnings of the company, credited as partial payments of principal. This case also is free from any element of actual or constructive fraud, such as has existed or been claimed in each of the other prior cases.

The material facts in this case are the following: From January 8 to May 21, 1901, the plaintiff subscribed to thirteen shares of class C, paying at the time to the defendant the full principal of $100 upon each share, and received from it the usual certificates, one for ten shares and three for one share each, each being in the same form, which for the larger number is the following:

" This Certifies that Agnes C. Wallis has paid the sum

of One Thousand Dollars, for ten fully-paid and unassessable preferred shares, Class ' C ' of the capital stock of the Eagle Savings and Loan Company. In consideration of such payment the legal holder will be paid, by mailed check, a semi-annual cash dividend of Thirty Dollars on the eighth days of July and January of each year, for the period of twelve years from the date of this Certificate, when its face value shall become payable unless previously paid. By giving sixty days' notice in writing to the Secretary the legal holder hereof may, at any time after one year from the date of this Certificate, withdraw the One Thousand Dollars paid hereon, together with any accrued and unpaid dividends.

" This Certificate is issued by authority of and subject to the provisions of the Articles of Association of the Corporation and the regulations adopted thereunder."

The defendant paid to the plaintiff upon her shares semi-annual dividends as follows: Up to January 1, 1912, at the rate of six per cent, and at the rate of five per cent from January 1, 1912, to July 1, 1914, nothing on January 1, 1915, and on July 1, 1915, two and one-half per cent. The action was commenced on December 16, 1916. Evidently those dividends were declared from the profits of defendant and so in certain semi-annual periods were less than six per cent, and in at least one nothing. The twelve-year period of maturity provided for in the certificates expired with the 21st of May, 1913, as the date of the last of the certificates was May 21, 1901.

On or about May 11, 1915, the plaintiff served upon defendant a written notice, which is in evidence as defendant's Exhibit F, demanding payment of the principal, $1,300, of her shares, together with any unpaid dividends accruing thereon. Apparently no dividend has been declared by the defendant since July 1, 1915.

Defendant's articles of association in force when plaintiff's shares were thus issued are in evidence as defendant's Exhibit A. Shortly after the act restricting the business of such corporations, viz., chapter 126 of the Laws of 1910 (amdg. Banking Law [Consol. Laws, chap. 2; Laws of 1909,

chap. 10], art. 6), went into effect on January 1, 1911 (referred to in our opinion in the *Miller Case*, 174 App. Div. 585), the defendant amended its articles. The same, as so amended, are in evidence as defendant's Exhibit H.

The main controversy between the parties is whether or not the plaintiff, as such shareholder and member, upon her said shares is subject to the provisions of the said articles, original or amended, as to withdrawal of shares. As to that point the contentions of the appellant are: (a) That the provisions in the original articles (defendant's Exhibit A), as to manner of payment upon withdrawals, are by their terms not applicable to the payment of matured shares, but only to the withdrawal of shares before full maturity; (b) that, if those provisions are to be construed to apply to payments upon maturity, they should be regarded as inconsistent with the contract made by plaintiff's certificates and so ineffective as to plaintiff's shares within the doctrine of *Tautphoeus* v. *H. & S. B. & S. Assn.* (185 N. Y. 308); and (c) that plaintiff, as to her such shares, is not bound by the change made by the amended articles (defendant's Exhibit H), which in express terms make the provisions as to manner of payment apply to payments after maturity as well as to those before. The respondent opposes each of these contentions and asserts the contrary.

As to the first of these contentions, namely, that those provisions of the original articles are by their terms not applicable to the payment of matured shares, but only to withdrawals before full maturity, I think that the appellant, the plaintiff, is clearly in the right. It seems to me plain that the original articles limited the term "withdrawal," or its equivalent, to the taking out of the present value of shares before their maturity, and also that that is the fair reading of the face of plaintiff's certificates. As to those articles the term "withdrawals" is used in articles 24, 25, 26, 31, 32 and 33, and in each it appears to be used in the restricted sense. In those articles the term "payment" or its equivalent is used for the payment of the shares after maturity. Thus in article 26, headed "classes 'B' and 'C,'" the provision is: "when [at the end of twelve years] the same [being the shares] will be deemed to have matured, and the par value of the

shares will become due and payable to the legal holders thereof unless previously withdrawn." Thus there, as to payment after maturity, the expression used is "due and payable," and as to payment before the expression used is "unless previously withdrawn."

My conclusion, therefore, is that by the terms of the original articles in force when plaintiff's certificates were issued, the provisions of articles 31 and 32 thereof, which as to class C stock require sixty days' notice of withdrawal and limit payment of withdrawals to "one-half of the monthly dues received in any one· month," are not applicable to the payment of such shares after maturity. It may be added that the defendant's officers appear to have recognized, at least in the end, this distinction, as in drafting their amended articles under the act of 1910 they made the corresponding provisions therein by express terms apply to payments after maturity, as well as those before, by adding the words "and matured shares" to the words "payment of withdrawals." The face of plaintiff's certificates also limits withdrawals to payments before maturity by, after providing for the payment upon maturity, declaring: "By giving sixty days' notice in writing to the Secretary the legal holder hereof may, at any time after one year from the date of this Certificate, withdraw the One Hundred Dollars paid hereon, together with any accrued and unpaid dividends."

The counsel for the respondent in opposition to this view cites and relies upon *Molyneaux* v. *Co-operative Building Bank* (169 App. Div. 731), and *Vought* v. *Eastern Building & Loan Association* (172 N. Y. 508), as authority that the term "withdrawal" should in those articles be construed as applying to payments after maturity as well as to those before. In the former case so cited it appears that the shares were not of the prepaid class, and there appears to have been no question of any other possible construction; and in the other case so cited the language of the articles was such that unless the term "withdrawing shareholders" therein providing for payments was construed to apply to payments of matured shares as well as payments made before maturity, no payment of matured shares would be provided for in the articles, which view would reach an absurd conclusion. In

the instant case the limitation in the original article 32 is to the application of " more than one-half of the monthly dues received in any one month " to the demands of withdrawing members, and there was by other articles at least another fund, known as the surplus fund, available for the payment of matured shares. Moreover, those articles appear to make no other disposition of the funds which the defendant realized from the original prepayment by members of class C shares. It is obvious also that if the construction claimed by the respondent be adopted, namely, that article 32 applies to payments after maturity as well as those before, there would in those articles be, in effect, no adequate provision for the payment of such shares after maturity, if any considerable amount of business in those shares was done by the defendant. Therefore, upon the argument of necessity which in that respect prevailed in the *Vought Case* (*supra*, 515), it should here be held, as above indicated, that article 32 does not apply to payments of shares after maturity.

It is, therefore, my conclusion that, according to both plaintiff's certificates and the articles in force when those certificates were issued, defendant's obligation was to pay to plaintiff the par value of the shares absolutely when they had matured, viz., at any time after the lapse of twelve years.

As to the appellant's second such contention, viz., that if those provisions in the original articles are to be construed to apply to payments before maturity, they should be regarded as inconsistent with the plaintiff's certificates and so ineffective as to plaintiff's shares within the doctrine of *Tautphoeus* v. *H. & S. B. & S. Assn.* (*supra*), it is immaterial whether or not the contention is sound if the view above expressed as to her first contention be correct. However that may be, I think that this case does not fall within the doctrine of that case, which was also to some extent reviewed in our opinion in the *Miller Case* (174 App. Div. 581, 587). In that case the certificate upon its face stated that it was issued and accepted " subject to the Articles of Association By-laws and Terms and conditions expressed on back hereof," and on the back of the certificate appeared only an express guaranty that the principal of the shares, which as here was prepaid, should be payable thirty days after maturity,

viz., after seventy-two months from issue (185 N. Y. 309, 310).
In the instant case the certificate contains no guaranty,
but its face contains this final clause: " This Certificate
is issued by authority of and subject to the provisions of the
Articles of Association of the Corporation and the regulations
adopted thereunder." Therefore, I think that plaintiff's
certificates were by their very terms subject to all the pro-
visions of the articles then in force, which by their terms
applied to such certificates.

As to appellant's third such contention, namely, that her
shares are not bound by the changes made by the amended
articles (defendant's Exhibit H), which in express terms
make said provisions as to manner of payment apply to
payments after maturity as well as those before, the claim of
the appellant is twofold, viz.: (a) That those amended articles,
by their very terms and by the terms of the statute under
which they were made (Laws of 1910, chap. 126, amdg. Bank-
ing Law [Consol. Laws, chap. 2; Laws of 1909, chap. 10], § 233),
do not apply to contracts which, like the plaintiff's certificates,
were made prior to January 1, 1911, when that act went into
effect; and (b) that it would be incompetent for the defendant
or even the Legislature to impair the validity of plaintiff's
such contract so far as to postpone the absolute payment after
maturity provided therefor until the defendant's receipts from
certain other sources should be sufficient therefor, either in
order or ratably, as the amended articles now provide. The
first of these claims seems to me to be well made. Both the
amended articles and the statute (Banking Law, § 233, as amd.
*supra*) expressly provide that contracts made before January 1,
1911, shall not be affected or governed by the amendments.
This is so absolutely plain that I do not deem it necessary to
examine the correctness of appellant's other claim that it would
be incompetent for either the Legislature or the defendant to so
modify her said contracts without her consent. The appellant
in this regard relies largely upon the case of *Sinteff* v. *People's
Building Assn.* (37 App. Div. 340; affd., 166 N. Y. 630), and
the counsel for the respondent in effect concedes that it was
incompetent for either the Legislature or the defendant to
abrogate the plaintiff's contract, but he claims that the
amended articles are more favorable to the plaintiff than the

original, in that the latter allowed only one-half of the receipts to be applied to the payment of withdrawals, whereas the former allows two-thirds thereof to be so applied. It may be noted also that the latter, the original, limited such payments to one-half, not of the receipts, but of the dues only, while the former, the amended, limits to two-thirds of all the receipts, so that the amended in that respect would seem more favorable to plaintiff than the original. It would appear, therefore, that plaintiff cannot complain of the modification of the articles in her favor, if the original articles in that respect applied to the payment of her shares after maturity.

The parties here are also at variance upon the question whether, if the limitation in the articles upon payments to withdrawing members are applicable to plaintiff's shares, the burden rested upon plaintiff or upon the defendant to establish that under that limitation defendant was or was not as yet bound to pay upon plaintiff's such shares, that is, that prior just claims for withdrawals had or had not exhausted all funds available under that limitation. Each party here claims that such burden rests upon the other. The decision contains no finding upon that point, and plaintiff's requests to find tender none such. It would seem, therefore, that the conclusion dismissing the complaint can be regarded as sustained by the findings only in case that burden rested upon the plaintiff. At the trial the plaintiff made no effort to bear that burden, and her counsel rests here upon his claim that defendant should have proven the facts imposing the bar of the limitation. The defendant on its part put in certain evidence upon the subject proving that when plaintiff's notice of withdrawal was served (defendant's Exhibit F) the prior notices of withdrawals of all classes of shares amounted to $10,993.15, and·that at that time defendant had cash on hand amounting to $28,329.29, and that its indebtedness then was $50,000. The evidence also showed that on July 12, 1915, sixty days after plaintiff's demand for payment was presented, the withdrawal notices amounted to $287,655.83, and the indebtedness to $75,000, and the cash on hand to $28,000. Those figures do not enable us to make any finding of fact sufficient for the application of the test of either the amended articles or the original ones, if such test be applicable to plaintiff's

shares, because they do not show the amount of dues in any one month, or the amount of the receipts of the defendant for any particular period. The respondent cites upon this point *Ronca* v. *New York Building Loan Banking Co.* (84 N. Y. Supp. 879), in which the Appellate Term, First Department, held that in such a case the plaintiff must allege and prove the existence of the fund required by the articles for such a payment. In answer to this authority as cited by the counsel for the respondent, the appellant's counsel replies merely that the doctrine has no application here because the limitation of the articles is not here applicable. I am not satisfied that the rule as to burden of proof asserted in the *Ronca Case* (*supra*) is correct. It would seem that such burden as to those facts ought upon general principles to rest upon the defendant, as the facts are necessarily peculiarly within its knowledge and constitute an exception to the general rule of liability. No one of the New York cases cited in the opinion in that case determined the question where such burden of proof rests, or anything more in that regard than that upon proof of the facts the limitation of the articles applies and bars plaintiff's recovery. Indeed in the only Court of Appeals case cited, viz., *Engelhardt* v. *Fifth Ward Loan Assn.* (148 N. Y. 281), the opinion at page 286 speaks of such facts as constituting " a good answer to the suit of a withdrawing member." However, in the view taken above, it is unnecessary here to decide that question.

It may be remarked that there appears no inequity in the plaintiff's claim to immediate judgment and enforcement, as we thought there was in the claim of the plaintiffs in the *Miller Case* (174 App. Div. 581). In that case the plaintiffs, as it seemed to us, must from the very nature of things have known that the payment in full of their shares in twelve years would require the realizing of large future earnings by the company and the allotting to them of their proportionate share thereof. Therefore, it seemed to us only equitable that, when those earnings by future events were reduced below the expectations prevailing when the Millers took their shares, they should bear with other like disappointed shareholders their proportion of such loss and disappointment (174 App. Div. 591). Here, however, this plaintiff

at once upon her subscription paid in to the defendant the
full amount of the par of her shares and could in no event
receive back more than the same with legal six per cent
interest thereon.   The defendant had for twelve years the
use of plaintiff's money and was obligated at the most to pay
her therefor only legal interest, and even less if defendant did
not earn the full legal rate.   The other shareholders of the
defendant have been entitled to share *pro rata* fully its profits,
which, as we know from the *Miller* case, in some years have
amounted to fifteen per cent, and it seems to me that they
have no equity against the plaintiff being paid back the
money she in effect loaned to defendant.   Theirs was the
possible gain of the defendant's business, and theirs, in my
judgment, should be the loss of its failure in whole or in part.

I conclude, therefore, that at the trial the plaintiff should
have had decision and recovery, and that, the facts being
undisputed, she should have the same relief here and not
merely reversal and a new trial.

The defendant introduced in evidence an order made
December 11, 1914, by this court, *ex parte*, upon application
of the defendant, with the approval of the State Superin-
tendent of Banks, but without notice to or appearance by
any shareholder, which purported to reduce defendant's
liability to its members, except upon a certain class not here
involved (Juvenile Savings Class), by .0918 per cent.   If
the plaintiff is to have a recovery here, or even if a new trial
be granted, we should determine whether or not that attempted
reduction is effective as to plaintiff's claim, which was entirely
matured before that order was made.   It cannot be reason-
ably questioned that plaintiff's status technically is that of a
member and not merely that of a creditor.   Before the issue
of plaintiff's shares it had been expressly decided that it was
competent for such an association to issue such shares.
(*People ex rel. Fairchild* v. *Preston*, 140 N. Y. 549, 552.)

It would seem, therefore, that the recipients of such shares
are merely members and not otherwise creditors or possessed
of any preference over other members, except such as may
be given by the articles.   The said order was made by this
court upon the authority of section 404 of the Banking Law,
which was new, having been added by chapter 369 of the

Laws of 1914 (Consol. Laws, chap. 2), which was a consolidation of the banking statutes with certain new provisions. The order was made upon the claim and theory that by losses defendant's solvency had become so impaired as to require that much reduction in its liabilities to its members. The effect of the order is very meagerly discussed in the briefs of counsel, there having been no oral argument here. The respondent's brief merely mentions the fact of the order; and the appellant's very briefly contends that it is ineffective as to plaintiff's contract, (a) because by section 418 of that act of 1914, its provisions, at least its new ones, cannot impair the previous obligations of any such association; and (b) because to give effect to such order as against plaintiff's prior contract would impair its obligation against the prohibition of the Federal Constitution (Art. 1, § 10, subd. 1). I think that the first of these contentions is clearly correct. As to whether or not, upon allegations and proof of the facts of such partial insolvency, the defendant could so reduce its liability to the plaintiff, is upon this record a mere abstraction, unnecessary to be here decided, because there is neither such allegation in the answer nor such proof in the evidence. The defendant elected in each to rest upon the bare fact of the order. Indeed, the evidence is that at the end of 1916, about the time this action was commenced, defendant had a surplus of $190,000, and that it had made $50,000 during that year. Whether or not that surplus was reckoned with the reduction attempted by that order, the record does not inform us. It appears to have been held in the *Sinteff Case* (*supra*, 37 App. Div. 340, 344; affd., 166 N. Y. 630) that such an association could not, even upon such facts proven, make such a reduction. I confess that except for that decision I would doubt the soundness of that proposition. Perhaps it may mean, after all, that such a reduction may be realized only in liquidation proceedings or in some general action in equity wherein all the shareholders affected are made parties. Such apparently was the view taken by us upon the final motion for a reargument in the *Miller Case* (*supra*, 176 App. Div. 883). It may be added that in the instant case the certificates upon their face declared the shares to be " unassessable," but I can find no express provision to that effect in the then existing,

that is, the original articles, defendant's Exhibit A. In the view just taken, that under said section 418 an order made under said section 404 is not applicable to prior existing obligations, it is of course unnecessary for us to decide whether or not in any event an order made under the latter section could bind a shareholder who was not notified and did not appear in the proceeding in which the order was made. Upon first consideration I would doubt that it could have that effect.

I advise, therefore, that the judgment appealed from be reversed, with costs, and that the plaintiff have decision here and judgment for the recovery of $1,300 principal, with interest thereon from May 11, 1915, and that the following findings of fact and conclusion in the decision be reversed, namely, findings VII, VIII and IX, and conclusion II, and that we make the following conclusion, viz.: "That the plaintiff is entitled to recover from the defendant the sum of $1,300, with interest thereon from May 11, 1915; and judgment accordingly, with costs to the plaintiff, is hereby directed."

THOMAS, STAPLETON, RICH and PUTNAM, JJ., concurred.

Judgment reversed, with costs, and plaintiff awarded decicision here, and judgment for recovery of $1,300 principal, with interest thereon from May 11, 1915. The following findings of fact and conclusion in the decision are reversed, viz., findings VII, VIII and IX, and conclusion II; and we make the following conclusion, viz., that the plaintiff is entitled to recover from the defendant the sum of $1,300, with interest thereon from May 11, 1915. Judgment directed accordingly, with costs to the plaintiff. Order to be settled before Mr. Justice MILLS.