Joseph T. Figueira, Plaintiff, *v.* Eaglé Savings and Loan Company, Defendant.

(Supreme Court, Kings Special Term for Trials, April, 1919.)

Savings and loan associations — who entitled to maintain an action for rescission and cancellation of certificate — tender — actions — Laws of 1910, chap. 126, § 215-d.

Plaintiff in 1911, after being informed by the secretary of defendant, a savings and loan association, that deposits in its savings account, which were paying five per cent interest, could not be withdrawn until after one year on sixty days' notice, deposited $1,000, receiving a certificate therefor which he subsequently cashed without objection on the part of defendant and without delay. Upon making a deposit of a like sum in 1914 he received another certificate upon the face of which, pursuant to section 215-d of chapter 126 of the Laws of 1910, was printed in heavy faced type, " withdrawable after one year on sixty days' notice " and upon his calling attention to the fact that the certificate called for " shares " he was told he need not worry, that that had no bearing on the case. *Held*, that plaintiff was entitled to maintain an action for the rescission of his agreement and a cancellation of the said certificate and of any records or evidence of his apparent membership in the defendant. That he was entitled to recover the amount deposited on receiving said certificate and in the absence of proof that he had received anything from defendant he was under no obligation to make a tender before bringing the suit.

The provision of said section 215-d is a limitation not merely upon the certificate holder's right to withdraw but also upon the power of the association to prevent withdrawal after the expiration of the period stated upon the face of the certificate, and while the language of said provision seems to require a statement negative in form, the affirmative form, " withdrawable after one year on sixty days' notice " is the legal equivalent of the negative form " not withdrawable until after the expiration of one year on sixty days' notice."

Action to recover deposit and for the cancellation of certificate issued by a savings and loan association.

Supreme Court, April, 1919.          [Vol. 107.

Joseph R. Clevenger, for plaintiff.

Hirsh, Newman & Reass, for defendant.

KELBY, J.    The plaintiff is a machinist, and during the period from 1911 to 1914 and subsequently he had a four per cent savings account with the defendant association.    In July, 1911, plaintiff called at the defendant's office and, while making a deposit in the savings account, he was informed by the receiving teller that " they had another savings account paying five per cent, and I could see Mr. Woods about it." Plaintiff then saw Mr. Woods, then secretary of the defendant, and said to him " I was informed that there was a savings account paying five per cent."    Mr. Woods said there was " but those accounts were issued in certificate form, the amount so deposited you would be given a certificate for, but those deposits could not be payable until after one year on 60 days' notice — with five per cent from the date of deposit to the date of withdrawal."

Upon this occasion, Mr. Woods handed the plaintiff a book issued by the defendant, saying that the book would explain the certificates.    The book was handed to him opened at the pages relating to income certificates.    The following appears in the said book:

" These certificates particularly appeal to those who wish to invest at the best rate obtainable, involving no speculation or risk.    These certificates are cashed by the company whenever desired by the holder after one year on 60 days' notice, with full dividends to date."

The plaintiff read the book.    On the last page, under the heading " Savings Sermons," are a number of trite statements depicting the virtues of a savings account, and presumably intended to inculcate in the minds of the readers the desirability of saving.

In July or August, 1911, the plaintiff deposited $1,000 and received a certificate, which he subsequently, and at a date not disclosed, cashed in without any objection being made by the defendant and without any delay so far as appears by the evidence.

The foregoing is a brief summary of plaintiff's relations with the defendant down to February, 1914.

In February, 1914, the plaintiff called at defendant's office, saw Mr. Woods, and told him that he desired " to deposit $1,000 for another certificate." Mr. Woods introduced the plaintiff to a Mr. Smith in the defendant's office, and told the latter to take care of the plaintiff. Plaintiff then testifies as follows: " I told Mr. Smith I wanted to deposit a thousand dollars, the same as I had previously done there, in the certificate of the same kind. Mr. Smith received the thousand dollars, made out the certificate and handed it to me, and while reading I see shares on it. I says ' This calls for shares. You know, this is only a deposit that will remain in the bank for about a year, and I desire to get it in about a year.' He said, ' You needn't worry.' He said ' That has got no bearing on the case. You can have your money after one year by giving the bank sixty days' notice — with interest from the date of deposit to the date of withdrawal.' "

At this time, plaintiff, of course, knew that he had received his money back with interest on the first certificate. The certificate he received in February, 1914, was similar to the one he had received in 1911 and subsequently cashed in without any delay or objection. Plaintiff further states that he never read the articles of association of defendant, and that they were never explained to him prior to 1917, although he knew that in 1915 the defendant was not then paying out any money.

The previous experience of the plaintiff in his dealings with the defendant justified him in believing that the so-called five per cent savings account which he proposed to open would, in no respect, differ from the ordinary account of a depositor in a real bank, except that it was of a higher rate of interest, and that it was only withdrawable at the expiration of one year on sixty days' notice.

Even without the occurrence in 1911, the transactions between the parties in 1914 lead to the same result. As a conversation took place with regard to the issuance of a prior certificate, the book theretofore distributed pursuant to the authority of the defendant was clearly admissible in evidence. The statements therein contained, particularly under the heading of " Income Certificates," relate to the character and nature of one portion of the business conducted by the defendant. They convey by apt language the impression that the accounts represented by these income certificates are essentially similar to ordinary accounts opened with real banks except as above stated, except with reference to interest rate and the time of withdrawal, and the impression so created must be presumed to have been intended. There is no evidence that these booklets had been withdrawn from publication, nor is there any evidence of retraction of the information so conveyed, nor any attempt to warn the public of any inaccurate or misleading statements therein contained. The law does not gloss over fraud because the injurious results thereof are not suffered within fixed periods of time.

Fraud can be predicated solely upon the transaction of 1914 without recourse to any prior business experience of the plaintiff with the defendant. After plaintiff called in February, 1914, and had his conversation with Mr. Woods and Mr. Smith, the certificate involved

in this action was issued to him.   Printed on the face
of the certificate, in heavy faced type, are the words
" withdrawable after one year on sixty days' notice."
These words are so printed, beyond doubt, pursuant
to the provisions contained in Laws of 1910, chapter
126, section 215, subdivision d.   This subdivision con-
tains, first, a permissive provision to the effect that
" the by-laws may provide that such shares shall not
be withdrawn until the expiration of fixed periods,
not exceeding ten years."   This is followed by the
express legislative command that " Whenever income
shares are issued which are not withdrawable until
the expiration of a fixed period, the statement that
they are not withdrawable until the expiration of such
fixed period shall be printed upon the face of the cer-
tificate of shares in type at least twice the size of type
used in the body of the certificate."

While the language just quoted from the statute
seems to require a statement negative in form, still
the affirmative form of statement " Withdrawable
after one year on sixty days' notice" is the legal equiv-
alent of the negative statement " Not withdrawable
until after the expiration of one year on sixty days'
notice."

This provision, it seems to me, is a limitation not
merely upon the certificate holder's right to with-
draw but also upon the association's power to prevent
withdrawal after the expiration of the period stated
upon the face of the certificate.   This provision neces-
sarily, by force of its manifest import, excludes from
consideration all inconsistent provisions contained in
the articles or by-laws.   It is a mandatory legislative
injunction that the statement so required to be printed
shall correctly and truthfully summarize the corporate
action with respect to the time of withdrawal of income
certificates.   That such was the legislative intent

Supreme Court, April, 1919.          [Vol. 107.

seems to conclusively appear upon the face of the statute. The mandatory provision follows the permissive provision. The association *may* provide that these income shares shall not be withdrawn until the expiration of fixed periods; if the association does so provide, then follows the mandatory injunction requiring a summary of the corporate action in this respect to be printed upon the face of the certificate in the manner prescribed. Were it necessary to search for a reason for a legislative intent so plainly disclosed that reason might be found in the difficulty encountered by prospective investors, especially if of limited business experience, in comprehending the intricate provisions of the articles of association and the by-laws of such companies and of forming a legally accurate conclusion as to the effect of corporate action with respect to withdrawals. To prevent confusion and misunderstanding in this respect is the purpose of the statute. That it was the intent that such statement upon the face of the certificate should be relied upon is an inference surely deducible from the legislative command that it be printed; and that the statement must truthfully summarize corporate action is an inference necessarily springing from the legislative intent that it should be relied upon. If this view be correct, the contention that the truth or falsity of the statement must be determined by an investor at his peril, after an examination of the articles of association, is untenable. Were such contention correct, then the direct result of the statutory provision would be to create and not obviate misunderstanding, to permit and not prevent fraud. *Mead* v. *Bunn*, 32 N. Y. 274.

By contending that the shares involved herein are not withdrawable in accordance with the statement printed on the face of the certificate, the defendant convicts itself of fraud. It thereby admits the falsity

of the statement.    That the representation was relied upon sufficiently appears; that it was a material representation is established by the fact that the words in question were printed pursuant to a command of the legislature; and the injury to plaintiff lies in his deprivation of the use of his money.    Here are present all the elements of actionable fraud.

I see nothing in the contention that the representation is promissory in character.    True, the word " withdrawable " imports future action; but this is beside the question.    The falsity of the representation lies in the impression thereby created that these shares are withdrawable at the expiration of a definite period capable of exact ascertainment and that a contract to that effect was then, when the representation was made, within the powers of the association and not inconsistent with its articles.    The representation relates to a power then existing in the association, as the result of corporate action, to then contract for the withdrawal of these shares in accordance with the printed notice on the face thereof.

The situation is not saved to defendant by the clause on the face of the certificate to the effect that it is issued by authority of and subject to the provisions of the articles of association.    If these shares be in fact withdrawable after the expiration of one year upon sixty days' notice, then the statement on the face of the certificate to that effect cannot conflict with the articles and the shares may truly be said to have been issued by authority of the articles.    If they be not so withdrawable, then the representation is false.

The plaintiff is entitled to recover.    The evidence does not disclose that he has received anything from the defendant.    He was, therefore, under no obligation to make a tender before bringing the action.

On the first trial of this action, Mr. Justice Benedict

was of the opinion that the facts established fraud. I see nothing inconsistent with this conclusion in *Wallis* v. *Eagle Sav. & Loan Co.,* 180 App. Div. 719, and I think there is much to support the conclusion in *Wareham* v. *Eagle Sav. & Loan Co.,* 185 id. 25.

As to remedy, I do not think defendant is right in his contention that plaintiff's remedy is at law and not in equity. This is not a case involving merely the purchase and sale of corporate securities as was *Dennin* v. *Powers,* 96 Misc. Rep. 252; nor is it a case where a completed agreement or transaction, like a contract, is sought to be cancelled as was *East River Bank* v. *Trust Co.,* 171 N. Y. Supp. 384. In the instant case, the plaintiff, as the result of defendant's fraud, has become the owner of ten shares of the capital stock of the defendant. It is so recited on the face of the certificate and this ownership is presumably otherwise indicated in the books and records of the association. By section 114 of the statute (Laws of 1910, chap. 126), the plaintiff, upon the acquisition of these shares, became a *member* of the defendant association and subject to the duties and liabilities, if any, attaching to such membership. Membership is a continuing status or condition; and the plaintiff cannot be compelled against his will to maintain a status of this character not voluntarily assumed but forced upon him by the fraud of the defendant. Besides, although plaintiff may not be personally liable for the defendant's debts, still he may, under section 226 of the statute and in the contingency therein specified, be hereafter subjected to possible assessments if he be compelled to remain clothed in the membership garb. For these reasons, it seems to me that plaintiff is entitled to a rescission of his agreement and a cancellation of the certificate and of any records or evidence of his apparent membership in the defendant

association. *Bosley* v. *National Mach. Co.*, 123 N. Y. 550; Cook Corp. § 155. In the section cited, the author says that a bill in equity is " the fairest, safest and most complete remedy that the subscriber has."

Judgment for plaintiff as prayed for in the complaint, with costs.

Judgment accordingly.